**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT ALBERGO,<br><br>                             Plaintiff,<br>   vs.<br><br>CUXHAVEN HOLDINGS, LTD., et al.,<br><br>                            Defendants. | CASE NO. 11CV1787 DMS (MDD)<br><br>**ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER** |

     This case comes before the Court on Plaintiff's *ex parte* application for a temporary restraining order ("TRO"). For the following reasons, Plaintiff's motion is granted.

**I.**

**BACKGROUND**

     In 2006, Plaintiff paid $1,000,000.00 for stock in Immunosyn Corporation, sold to him by James Miceli, Douglas A. McClain Sr., and an alleged agent, Jochen Brenner. (*See* Tine Decl. Ex. 1.) Plaintiff claims he purchased the stock in reliance on fraudulent statements and ultimately lost over $775,000.00. Plaintiff has also filed another action in this Court regarding his purchase of said stock. *See Albergo v. Immunosyn Corp.*, 09cv2653 DMS (MDD). On July 13, 2011, the Court issued an Order in that action granting Plaintiff Albergo and co-Plaintiff David Irwin's amended motion for a writ of attachment in the amount of $625,000.00. *See* 09cv2653, Doc. 122.

     On August 6, 2011, Plaintiff filed the instant Complaint. (Doc. 1.) In the Complaint, Plaintiff alleges James T. Miceli, Douglas A. McClain, Sr., Douglas A. McClain, Jr., Cuxhaven Holdings, Ltd.,

Padmore Holdings, Ltd., Argyll Equities, LLC, and/or Argyll Biotechnologies, LLC (collectively, herein, "Debtors"), transferred stock in Immunosyn Corporation to the Defendants in violation of the Uniform Fraudulent Transfers Act ("UFTA"). Plaintiff filed an *ex parte* motion for a TRO on August 11, 2011. (Doc. 3.) Plaintiff seeks a TRO restraining Defendants Sam Miceli, Nu Start B&R, LLC, Magnolia Consulting & Funding, LLC, Padmore Holdings, Ltd., Cruxhaven Holdings, Ltd., William Scott, and Joseph Salvani, and non-party First Southwest Company, from further transferring or disposing of the stock received from the Debtors or the proceeds from the sale of said stock to the extent of $775,000.00.

## II.

## LEGAL STANDARD

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974)(noting a temporary restraining order is restricted to its "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 376 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). A party seeking injunctive relief under Federal Rule of Civil Procedure 65 must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)(quoting *Winter,* 129 S. Ct. at 374). With respect to the showing a plaintiff must make regarding his chances of success on the merits, the Ninth Circuit applies a sliding scale approach. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the sliding scale approach, the elements of the preliminary injunction test are balanced and, where a plaintiff can make a stronger showing of one element, it may offset a weaker

showing of another. *Id*. at 1131, 1134-35. "Therefore, 'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1134-35.

## III.

## DISCUSSION

Plaintiff argues he is likely to succeed on the merits of his claim for violation of the UFTA. Under the UFTA, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Cal. Civ. Code § 3439.05. The statute defines "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Cal. Civ. Code § 3439.01(b). Plaintiff became a creditor of the Debtors in March 2006, which was before the transfers Plaintiff alleges in the instant action took place. (*See* Tine Decl. Exs. 4, 7-11, 13.) Plaintiff argues the Debtors transferred the stock without receiving reasonably equivalent value in return, as evidenced by the letters from James Miceli and the transfers to Mr. Miceli's family members. (*See, e.g., id.* at Ex. 10.) He further points to the fact that Defendant Padmore Holdings, Ltd. cannot provide any evidence of the receipt of money for stocks it sold, despite the fact that its SEC filings indicate it did sell such stock. (*See id.* at Ex. 5.) As to insolvency of the Debtors, the UFTA provides "[a] debtor who is generally not paying his or her debts as they become due is presumed to be insolvent." Cal. Civ. Code § 3439.02(c). Plaintiff also cites a letter from Debtors' counsel, dated December 10, 2008, stating "Argyll is out of money and, as far as I know, Jim Miceli and Doug McClain, Jr. are out of money . . . ." (Tine Decl. Ex. 2.) Under the UFTA, a creditor may obtain an attachment, injunction, or other provisional remedy. Cal. Civ. Code § 3439.07(a). Accordingly, Plaintiff has, at the least, raised serious questions going to the merits of his claim under the UFTA.

Plaintiff has also shown the balance of hardships tips sharply towards him. If the TRO is not

1  issued, Plaintiff runs the risk of Defendants making further transfers of the Immunosyn shares or the
2  proceeds of the sales of such shares, and could be unable to collect on any future judgment obtained
3  against the Debtors. In contrast, if the TRO is issued, Defendants will merely be forced to temporarily
4  freeze stock or the proceeds from the sale of stock until the Court determines whether reasonable value
5  was exchanged for the shares received by Defendants.

6  Plaintiff has shown a possibility of irreparable harm in the potential loss of the ability to collect
7  on any potential future judgment against the Debtors. Finally, as Plaintiff has argued, it is in the
8  public interest that judgments be satisfied. Accordingly, Plaintiff's motion for a TRO is granted.[1]

9  Plaintiff also requests the TRO apply to non-party First Southwest Company. Plaintiff states
10 First Southwest is holding Immunosyn stock for the benefit of Defendant Sam Miceli. Rule 65
11 provides that it binds persons "who are in active concert or participation with any of" the parties or
12 the parties' officers, agents, servants, employees, or attorneys, if such persons receive actual notice
13 of the TRO by personal service or otherwise. Fed. R. Civ. P. 65(d)(2); *see also Fed. Trade Comm'n*
14 *v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1106 (C.D. Cal. 2001)(holding a court may properly
15 enjoin a non-party when that non-party's conduct threatens the court's ability to render an effective
16 judgment.). The Court therefore finds it proper for the TRO to apply to non-party First Southwest
17 Company.

18 Under Rule 65, "[t]he court may issue a preliminary injunction or a temporary restraining order
19 only if the movant gives security in an amount that the court considers proper to pay the costs and
20 damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ.
21 P. 65©). Plaintiff requests the Court require him to post a bond of $5,000.00, which the Court finds
22 appropriate.

23 //

---

[1] Federal Rule of Civil Procedure 65(b)(1) provides that the Court may issue a TRO without written or oral notice to the adverse party if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and reasons why it should not be required." Here, Plaintiff's counsel filed a declaration stating "Plaintiff seeks this temporary restraining order *ex parte* because advance notice to the transferees, who are friends, family and close associates of the Debtors, may result in further transfers of assets." (Tine Decl. ¶ 19.) Any such transfers would likely cause irreparable injury to Plaintiff. Accordingly, the Court may properly issue the TRO without notice.

## IV.

## CONCLUSION

For the foregoing reasons, Plaintiff's application for a TRO is granted. Defendants Sam Miceli, Nu Start B&R, LLC, Magnolia Consulting & Funding, LLC, Padmore Holdings, Ltd., Cuxhaven Holdings, Ltd., William Scott, and Joseph M. Salvani, and non-party First Southwest Company are restrained from further transferring or disposing of the stock received from the Debtors or the proceeds from the sale of said stock to the extent of $775,000.00. Defendants subject to this TRO are ordered to show cause why a preliminary injunction should not be issued on the same terms as the TRO for the duration of this case, by filing no later than noon on August 26, 2011 a memorandum of points and authorities not to exceed 25 pages in length together with supporting evidence, if any. A hearing shall be held regarding the issuance of a preliminary injunction on August 30, 2011 at 1:30 p.m. in Courtroom 10.[2] This temporary restraining order shall remain in place for 14 days or until this Court issues an Order on Plaintiffs' motion for a preliminary injunction, whichever shall first occur. Plaintiffs shall forthwith serve a copy of this Order upon all Defendants.

**IT IS SO ORDERED.**

DATED: August 23, 2011

_____
HON. DANA M. SABRAW
United States District Judge

---

[2] Federal Rule of Civile Procedure 65(b)(3) states, "[if] the [TRO] is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order."